UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LATONIA JONES, individually and on behalf
of her minor child, DJ,

                              Plaintiff,

    -against-

COUNTY OF WESTCHESTER, ROSA HAZOURY,
ELKE KNUDSEN, and LISA COLIN, ESQ.,

                         Defendants.

No. 14-cv-7635 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Latonia Jones, individually and on behalf of her minor child D.J., asserts claims

against the County of Westchester (the "County"); Rosa Hazoury and Elke Knudsen, employees

of Westchester County (together with the County, the "County Defendants"); and Lisa Colin,

esq., arising out of D.J.'s removal from the custody of her biological mother, Latonia Jones.

      Before the Court are the motions of the County Defendants and Defendant Colin to

dismiss Plaintiff's Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rule of Civil Procedure and for judgment on the pleadings pursuant to Rule 12(c). For

the following reasons, the motions are GRANTED in part and DENIED in part.

## BACKGROUND[1]

      D.J. is a minor child of Plaintiff Latonia Jones.[2]  (Second Amended Complaint ("Am.

Compl.") ¶¶ 13.)  On January 10, 2003, the Westchester County Department of Social Services

("DSS") received a report alleging "Inadequate Guardianship" with respect to Latonia Jones, and

---

[1] The facts are as alleged in the Second Amended Complaint (ECF No. 26), unless otherwise noted.

[2] Pursuant to Rule 4(A)(i) of the Court's Individual Practices in Civil Cases, the parties are reminded to refrain from using the names of minor children and directed to use initials only.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/14/2015

DSS initiated a preventive services case.  (*Id*. ¶ 14.)  On May 19, 2005, DSS removed all four of Latonia Jones' children from her custody, including D.J, and the children were placed under the "control, custody, and care" of Defendants Rosa Hazoury and Elke Knudsen.  (*Id*. ¶ 15.)  On or about May 24, 2005, a neglect petition was filed against Latonia Jones with respect to all four of her children.  (*Id*. ¶ 18.)  During a June 21, 2005 appearance in the neglect proceeding, Latonia Jones entered into a consent finding pursuant to Family Court Act 1051A for neglect and consented to an order of supervision over her household.  (*Id*. ¶ 19.)  In July 2005, Monica Gray was assigned as D.J.'s Court Appointed Special Advocate ("CASA") and continued to be D.J's CASA for six and a half years.  (*Id*. ¶ 20.)

On August 2, 2005, D.J. was sent to the Andrus Center for Learning and Motivation in Yonkers, New York ("Andrus") after brief stays in two separate foster homes.  (*Id*. ¶ 21.)  Two months after her arrival, Andrus performed an evaluation of D.J. and concluded she suffered from jealousy issues, precocious sexual knowledge, needed anti-psychotic medication, lacked focus and language skills, had average cognitive skills, and was noted as seeing and hearing things.  (*Id*. 22.)  D.J. was heavily medicated with Risperdal and Depakote.  (*Id*.)  D.J.'s discharge summary diagnosed her with Post Traumatic Stress Disorder, Attention Deficit Hyperactivity Disorder, Bipolar Disorder, and Psychotic Disorder.  (*Id*.)  Though Andrus created an individualized education plan ("IEP") for D.J., it was never implemented and D.J. remains uneducated.  (*Id*.)

In November 2005, Hajirah Holmes, a member of Latonia Jones' church, assumed responsibility as a foster parent for D.J.  (*Id*. ¶ 25.)  During this time, Latonia Jones was taking parenting classes to facilitate the return of her children to her home.  (*Id*. ¶ 24.)  In January 2006, Plaintiff acted out at school and was thereafter hospitalized at Four Winds Hospital in Katonah,

New York ("Four Winds") for a month. (*Id.* ¶ 26.) Upon D.J.'s return to Ms. Holmes'

residence, Ms. Holmes reported to CASA Monica Gray that she was concerned D.J. may be

overmedicated. (*Id.*) D.J. was homeschooled during the spring of 2006 and attended Clear View

School beginning in September 2006 through June 2007. (*Id.* ¶¶ 27–29.)

In July 2007, Latonia Jones requested that DSS delay filing a Termination of Parental

Rights ("TPR") petition to enable her to comply with DSS's requirements for the return of her

children, including additional parenting classes. (*Id.* ¶ 30.) Nevertheless, DSS filed a TPR

petition with respect to D.J. (*Id.* ¶ 31.) Plaintiff contends that this raised tension between D.J.'s

foster parent and Latonia Jones. (*Id.*) On June 17, 2007, D.J. was again admitted to Four Winds

due to the stress caused by tension between D.J.'s foster parent and Latonia Jones. (*Id.* ¶ 34.) At

Four Winds, D.J. was diagnosed with Mood Disorder NOS, Oppositional Defiant Disorder, and

Psychotic Disorder NOS, and she was put on various medications. (*Id.* ¶ 35.) D.J. remained at

Four Winds until November 26, 2007, at which time she was transferred to the Astor Home in

Rhinebeck, New York. (*Id.* ¶ 34.) D.J. repeatedly was hospitalized at Four Winds when she

became unmanageable at Astor. (*Id.* ¶¶ 38–43.)

On October 15, 2008, D.J. was again hospitalized due to increasingly violent behavior,

including self-abuse and suicidal statements. (*Id.* ¶ 47.) Four Winds refused to take D.J., so she

was instead hospitalized at Stony Lodge Hospital. (*Id.*) Though Stony Lodge was intended to be

a temporary placement, D.J. remained there for 11 months. (*Id.*)

In December 2008, CASA Monica Gray reported to the Family Court that D.J. had not

been educated since she was removed from Ms. Holmes' custody in September 2007 and that

D.J. was too needy to remain in facilities. (*Id.* ¶¶ 48–49.) Additionally, in February 2009,

CASA Monica Gray expressed concerns to the Family Court about the length of time D.J. had

spent in hospitals and D.J.'s powerful drug treatments.  (*Id*. ¶ 50.)  On June 17, 2009, the

Defendants received a reported from CASA Monica Gray which advocated, in part, that D.J. be

placed in a therapeutic foster home.  (*Id*. ¶51.)  DSS agreed and identified a potential foster

mother for D.J.  (*Id*.)  That placement failed one month after D.J. arrived at the home in

September 2009.  (*Id*. ¶ 61.)  Even though the placement had already failed, an October 6, 2009

permanency hearing report noted only that D.J. was adjusting to her new foster home.  (*Id*. ¶ 62–

63.)

       D.J. was then sent to Westchester Medical Center Behavioral Health Center

("Westchester Medical"), where she was diagnosed with Psychotic Disorder, Pervasive

Development Disorder, Intermittent Explosive Disorder, and Adjustment Disorder and placed on

medication including Colace, Depakote, Trilafon, Tenex, and DDVAP.  (*Id*. ¶ 64.)  CASA was

not allowed to visit D.J. while she was at Westchester Medical.  (*Id*. ¶ 68.)  In April 2010, D.J.

returned to Four Winds where she was heavily medicated and remained uneducated.  (*Id*. ¶ 69.)

A November 5, 2010 Permanency Hearing Report created by DSS recommended long term

residential treatment for D.J.  (*Id*. ¶ 72.)  Additionally, a Family Court judge had ordered a new

TPR petition be filed against Latonia Jones due to the lapse of the suspended judgment on the

previous TPR.  (*Id*.)  On November 8, 2010, D.J. was discharged from Four Winds and

transferred to Rockland Children's Psychiatric Center ("RCPC") in Orangeburg, New York,

where she remained until June 2012.  (*Id*. ¶ 73.)

       By February 2011, D.J. lacked adequate clothing and remained uneducated.  (*Id*. ¶ 77.)

By June 2012, D.J. had been in DSS custody for over seven years—more than half her life.  (*Id*.

¶ 81.)  At this time, the Family Court ordered that D.J. be returned to Latonia Jones' custody,

even though Plaintiff contends there was no change in circumstance in Latonia Jones' household

between the date of D.J.'s removal and that time.  (*Id.*)  Within days of her return to Latonia

Jones' custody, D.J. was hospitalized at Westchester Medical.  (*Id.* ¶ 82.)  On August 15, 2012,

the Family Court again discharged D.J. to her mother's custody, but she was shortly thereafter

admitted to Parsons Child and Family Center in Albany, New York where she remained until

August 29, 2013.  (*Id.* ¶¶ 83–85.)  D.J. spent one week at home before returning to Westchester

Medical and then a group home from September 2013 until March 2014.  (*Id.* ¶ 85.)  D.J.

returned to Latonia Jones' custody in March 2014.  (*Id.*)

## LEGAL STANDARDS

### I.      Motion to Dismiss Standards

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  *Nike, Inc. v.*

*Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted).  "A plaintiff asserting

subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it

exists."  *Morrison v. Nat'l Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (quoting

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In assessing whether there is

subject matter jurisdiction, the Court must accept as true all material facts alleged in the

complaint, *Conyers v. Rossides,* 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve

[any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as

affidavits . . . ." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d

Cir. 2000).

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007));

*accord Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010).  The Court, again, must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is " 'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## II.     Judgment on the Pleadings Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'"  *Graziano v. Pataki,* 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Twombly,* 550 U.S. at 570).  The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006); *see also* Fed. R. Civ. P. 12(b)(6).  "Judgment on the pleadings 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'"  *Virgin Grp. Holdings Ltd. v. Energy Parametics & Commc'ns, Inc.*, No. 10-cv-08752 (BSJ) (THK), 2011 WL 4448943, at *1 (S.D.N.Y. Sept. 26, 2011) (quoting *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).

**DISCUSSION**

**I.      Abstention**

The County Defendants contend that the *Younger* abstention doctrine and *Rooker-Feldman* doctrine should compel this Court to refrain from exercising jurisdiction over Plaintiff's claims.  (County Defendants' Memorandum of Law in Support of Motion to Dismiss ("County Defs.' Mot.") at 15–17.)  Whereas the *Younger* doctrine dictates that federal courts should "abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests," *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237–38 (1984); *see Younger v. Harris*, 401 U.S. 37 (1971), the *Rooker-Feldman* doctrine mandates that federal district courts lack "subject matter jurisdiction over claims that effectively challenge state court judgments."  *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923)).  As explained more fully below, the Court need not reach the issue of whether the *Rooker-Feldman* doctrine applies since the Court finds that abstention from hearing Plaintiff's substantive due process claim is appropriate under *Younger*.

*Younger* "and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  The *Younger* abstention doctrine is rooted in "[t]he notion of 'comity,'" which "includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will

7

fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Id.* (quoting *Younger*, 401 U.S. at 44).

The Second Circuit has established a three part test for determining whether *Younger* abstention is appropriate: "(1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding." *Christ the King Reg'l High Sch. v. Culvert*, 815 F.2d 219, 224 (2d Cir. 1987), *cert. denied*, 484 U.S. 830 (1987); *see also Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 182–83 (2d Cir. 1991), *cert. denied,* 502 U.S. 866 (1991).

Turning to the first element, Plaintiff concedes that there are ongoing state civil proceedings.  (Memorandum of Law in Opposition to Defendant County of Westchester, Rosa Hazoury, and Elke Knudsen's Motion to Dismiss ("Pl.'s County Opp.") at 16.)  As the County Defendants make clear in their reply brief, the ongoing proceedings are permanency hearings in the Westchester County Family Court.  (County Defendants' Reply Memorandum of Law in Support of Motion to Dismiss ("Count Defs.' Reply") at 9.)  "[N]umerous courts have found that ongoing Family Court proceedings satisfy the first *Younger* element."  *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 290 (S.D.N.Y. 2000) (collecting cases). Therefore, the first element of the *Younger* abstention test is satisfied.

The second element of the *Younger* abstention test is easily satisfied because "state courts have a paramount if not exclusive interest in child custody cases."  *Neustein v. Orbach*, 732 F. Supp. 333, 341 (E.D.N.Y. 1990); *see also Reinhardt v. Com. Of Mass. Dep't of Soc. Servs.*, 715 F. Supp. 1253, 1256 (S.D.N.Y. 1989) (citing *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Questions of family relations, especially when issues of custody . . . are involved, are

traditionally an area of state concern.")); *Thomas v. New York City*, 814 F. Supp. 1139, 1149

(E.D.N.Y. 1993) (collecting cases).

Finally, the Court must examine whether Plaintiff has, or has had, the opportunity to raise

her constitutional claims in the state court proceeding.  Plaintiff asserts that neither she nor D.J.

is able to assert substantive due process claims on behalf of D.J. in Westchester County Family

Court because D.J. is involuntarily committed; D.J. cannot speak and act on her own behalf; and

Plaintiff cannot influence what happens to D.J. while she remains in the County's custody.  (Pl.'s

County Opp. at 16.)  The County Defendants maintain, on the other hand, that D.J. can speak for

herself since Section 1089 of the Family Court Act mandates age appropriate consultation with

the subject child prior to the family court ordering a permanency plan.  (County Defs.' Opp. at

9.)

"This Circuit has often recognized the obligation and competence of state courts to

decide federal constitutional questions."  *Donkor v. City of New York Human Res. Admin.*

*Special Servs. for Children*, 673 F. Supp. 1221, 1226 (S.D.N.Y. 1987) (citing *Texaco Inc. v.*

*Pennzoil Co.,* 784 F.2d 1133, 1142 (2d Cir.1986); *Star Distributors, Ltd. v. Marino,* 613 F.2d 4,

8 n. 10 (2d Cir.1980)).  "Clearly, the Family Court of New York is bound by the Federal

Constitution.  Thus, notions of comity and federalism compel the assumption that the Family

Court is competent to hear and thoughtfully consider the plaintiff's constitutional challenges."

*Reinhardt*, 715 F. Supp. At 1257 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987).  In light

of the numerous decisions in this circuit holding that a family court is competent to hear a

plaintiff's constitutional claims, *see, e.g., Reinhardt*, 715 F. Supp. at 1257; *Thomas*, 814 F. Supp.

at 1150, the Court finds that Plaintiff has more than ample opportunity to raise her substantive

due process claims in the family court proceeding.  Plaintiff has failed to carry her burden that

she will be precluded from raising her federal constitutional claims in the state court action. *See*

*Thompson v. Vacco*, No. 96-cv-8670 (SS), 1997 WL 539949, at *5 (S.D.N.Y. Aug. 29, 1997)

(citing *Penzoil*, 481 U.S. at 14).

Moreover, since Plaintiff does not assert, nor has this Court determined, that any of the

narrow exceptions to the *Younger* abstention doctrine apply,[3] the Court finds it appropriate to

refrain from considering Plaintiff's substantive due process claims at this juncture and stays

Plaintiff's substantive due process claim pending the outcome of the family court proceeding.

*See Thomas*, 814 F. Supp. at 1150 (citing *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988)

(holding the *Younger* doctrine requires a court to stay, rather than dismiss, claims for monetary

relief).

## II.     Civil RICO Claim

The Court next turns to Plaintiff's civil RICO claim.[4]   In order to state a claim for relief

under RICO, "a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an

injury to business or property; and (3) that the injury was caused by the violation of Section

1962." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (internal

citations and quotation marks omitted). "Under any prong of § 1962, a plaintiff in a civil RICO

---

[3] Courts have construed two narrow exceptions to the *Younger* doctrine: (i) the bad faith exception and (ii) the exceptional circumstances exception. "To invoke the [bad faith] exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002) (citing *Schlager v. Phillips*, 166 F.3d 439, 442–44 (2d Cir. 1999)). The exceptional circumstances exception applies only if "the state court [is] incapable of fairly and fully adjudicating the federal issues before it . . . ." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975). Circumstances are extraordinary "in the sense of creating an extraordinary pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Id*. at 125.

[4] The County Defendants contend that Plaintiff's civil RICO claim fails at the outset because Plaintiff did not file and serve upon the opposing party a RICO statement setting forth the elements required to plead a civil RICO claim. (County Defs.' Mot. at 18.) However, as Plaintiff points out, the County Defendants cite to the Individual Rules & Procedures of another Judge in this District for that proposition. This Court has no such requirement for civil RICO claims in its Individual Practices in Civil Cases. Therefore, the Court declines to dismiss Plaintiff's civil RICO claim on this basis.

suit must establish a 'pattern of racketeering activity' ... [,]must plead at least two predicate acts ... and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *GICC Capital Corp. v. Tech. Fin. Grp., Inc.,* 67 F.3d 463, 465 (2d Cir.1995) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989)).

Plaintiff's civil RICO claim appears to be predicated upon two alleged acts of retaliation: (1) the County's removal of three of Plaintiff's children from her custody in October 2014, and (2) Defendant Colin's filing of the motion for the appointment of a guardian *ad litem* for D.J. With respect to the first incident, on or about October 7, 2014, Plaintiff sought assistance from the local County DSS office to pay her electric bill following the electric company's termination of power at her residence for nonpayment of her electric bill.  (Am. Compl. ¶ 127.)  Plaintiff alleges she was informed that since her name was not listed on the bill, she must return to the County DSS office with her husband the following day to seek assistance.  (*Id*. ¶ 128.)  When Plaintiff returned home, a caseworker, Gabrielle Mendoza, was at her residence and allegedly demanded to inspect Plaintiff's apartment.  (*Id*.)  Plaintiff informed Ms. Mendoza that since she did not have power, she had been staying with her children at a neighbor's home.  (*Id*.)  Subsequently, on October 10, 2014, the County made an emergency application to remove Plaintiff's children for neglect.  (*Id*. ¶ 129.)  Three of Plaintiff's children, but not D.J., were removed from Plaintiff's custody on October 11.  (*Id*.)  Plaintiff contends that her children were removed from her custody in retaliation for Plaintiff's initiation of the instant federal case.  (*Id*. ¶ 130.)  As to the second alleged act, Plaintiff asserts that Defendant Colin has not withdrawn as counsel for D.J. in the Family Court action despite Defendant Colin's receipt of a letter in October 2014 pointing on the apparent conflict of interest between her representation of D.J. in Family Court and being named as a defendant in the present action.  (*Id*. ¶¶ 136-37.)

Additionally, Defendant Colin will not withdraw her motion seeking the appointment of a guardian *ad litem*. (*Id.* ¶ 137.)

Plaintiff's Second Amended Complaint does not specify how these incidents qualify as predicate acts of "racketeering activity" within the meaning of 18. U.S.C. § 1961(1). Additionally, Plaintiff's opposition brief merely states in a conclusory fashion that Plaintiff has "pled particularized facts with respect to the RICO claim . . . ." (Pl.'s Opp. at 17.) Based upon the Court's review of the pleadings, Plaintiff's arguments, and the relevant statute, it is clear that Plaintiff has failed to allege any action on the part of either the County Defendants or Defendant Colin constituting racketeering activity. Accordingly, Plaintiff's civil RICO claim is dismissed.

## III.     State Law Claims

Having dismissed Plaintiff's civil RICO claim and stayed Plaintiff's substantive due process claim, the Court next considers whether it may properly adjudicate Plaintiff's remaining state law claims. Pendent jurisdiction allows a federal court to consider state law claims when they "arise out of the same set of facts that give rise to an anchoring federal question claim." *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000) (citing 28 U.S.C. § 1367; *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 576 (2d Cir. 1995)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The state and federal claims must derive from a common nucleus of operative fact."). In *Kirschner*, the Second Circuit noted that if application of the *Younger* doctrine warranted a stay of plaintiff's federal claim pending the outcome of state law proceedings, then the district court had discretion to stay related state law claims as well. 68 F.3d at 238–39.

Plaintiff alleges the following state law claims in this action: (1) common law negligence against the County Defendants premised upon the County's failure to provide adequate care to

D.J. while in the County's custody, and (2) legal malpractice as against Defendant Colin for her failure to provide adequate representation to D.J. Like Plaintiff's federal claims, these state law claims are premised upon alleged failures on the part of D.J.'s caretakers to provide adequate services to D.J. upon her removal from her mother's custody. Therefore, the state law claims and Plaintiff's federal constitutional claim arise out of a "common nucleus of operative fact." The Court deems it appropriate to stay its consideration of Plaintiff's state law claims pending the disposition of the proceeding in Family Court.

## IV.    Punitive Damages

Having stayed Plaintiff's federal substantive due process claim and related state law claims, the Court declines to reach the issue as to whether punitive damages are appropriate at this juncture.

## CONCLUSION

For the foregoing reasons, the County Defendants' and Defendant Colin's motions to dismiss and for judgment on the pleadings are GRANTED to the extent of dismissing Plaintiff's civil RICO claim and DENIED in all other respects. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 34 and 38. In accordance with the opinion and order, the Court's consideration of Plaintiff's federal due process and state law claims is stayed pending the outcome of the state court proceedings.

Dated:    December 14, 2015                         SO ORDERED:
          White Plains, New York

                                        _____
                                             NELSON S. ROMÁN
                                        United States District Judge