UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2021

In the Matter of D.J., a minor child, by her Next of
Friend, PATRICIA MCDONNELL MEGAHEY, and
LATONIA JONES, individually,

                              Plaintiffs,

        -against-

COUNTY OF WESTCHESTER, ROSA HAZOURY,
ELKE KNUDSEN, and LISA COLIN, ESQ.,

                              Defendants.

No. 14-cv-7635 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiff Patricia McDonnell-Megahey, next of friend for Plaintiff D.J. ("DJ"), and

Plaintiff Latonia Jones ("Jones") (collectively, "Plaintiffs") bring this action against the County

of Westchester, Rosa Hazoury, and Elke Knudsen, (together with the County, the "County

Defendants"), and Lisa Colin, Esq. ("Colin," and together with the County Defendants,

"Defendants").

        Presently before the Court is Plaintiffs' motion for leave to file a proposed Third

Amended Complaint ("PAC"). (ECF No. 187.) Defendants oppose Plaintiffs' motion. In the

alternative, Defendants have moved to dismiss the PAC. (ECF Nos. 189, 193.) For the

following reasons, Plaintiffs' motion for leave is GRANTED, Defendant Colin's motion to

dismiss is GRANTED, and the County Defendants' motion to dismiss is GRANTED in part and

DENIED in part.

## BACKGROUND

**I.    Factual Background**

The Court assumes familiarity with underlying facts that gave rise to this lawsuit. *See Jones v. Cnty. of Westchester*, No. 14-cv-7635 (NSR), 2015 WL 8968359, at *1-2 (S.D.N.Y. Dec. 14, 2015) (ECF No. 121). In short, DJ was, at all relevant times, a minor receiving services from and/or in the care of the County. Plaintiff Jones is DJ's mother. Defendants Hazoury and Knudsen are Senior Case Managers employed by the County and responsible for DJ's care. Defendant Colin is an attorney who was appointed to represent DJ and her siblings in Family Court.

DJ was removed from her mother's care at the age of five. Although DJ was temporarily placed in a therapeutic foster home, she ultimately spent a significant portion of her time in the County Defendants' care hospitalized at various facilities. Plaintiffs allege that, among other things, DJ was improperly medicated and hospitalized, isolated, and denied an education throughout her time in the County Defendants' care, which led to her physical, mental, and emotional decline.

## II.     Procedural Background

### A.  Plaintiffs' Commencement of the Action and Subsequent Amendments

Plaintiffs commenced this action on September 19, 2014, and filed their First Amended Complaint on October 20, 2014. (ECF Nos. 1, 4.) Following an Initial Pretrial Conference on November 19, 2014, Plaintiffs were granted leave to file a Second Amended Complaint ("SAC"), while Defendants were granted leave to file Rule 12(b) and 12(c) motions. In the interim, the case proceeded to discovery before Magistrate Judge Judith C. McCarthy. (ECF No. 18.)

Plaintiffs filed the SAC on January 15, 2015 and again on January 27, 2015 due to a filing error. (ECF Nos. 23 & 26.) The SAC, which covered events that occurred between 2005 and 2014, contained a total of 28 pages and 142 paragraphs, excluding subparagraphs. (ECF No.

23.)  Thereafter, on April 3, 2015, Defendants filed their respective motions to dismiss and motion for judgment on the pleadings. (ECF Nos. 34 & 38.)  Meanwhile, discovery continued.

**B.  The December 14, 2015 Decision**

On December 14, 2015, this Court issued its Opinion and Order on Defendants' various motions.  (ECF No. 121.) The Court first addressed Defendants' contention that *Younger* abstention should prevent the Court from exercising jurisdiction over Plaintiffs' substantive due process claims and related state-law claims. (*Id.* at 7.) The Court concluded that *Younger* abstention did apply because Plaintiffs could raise their substantive due process claims, and related state-law claims, in pending proceedings before the Westchester County Family Court. (*Id.* at 8-10.) Accordingly, the Court stayed resolution of Defendants' challenges to Plaintiffs' substantive due process and state-law claims. (*Id.* at 10.)  The Court also granted Defendants' motion to dismiss Plaintiffs' civil RICO claim. (*Id.* at 13.)

Two weeks later, on December 28, 2015, Plaintiffs moved for reconsideration of the December 14, 2015 decision.  (ECF No. 125.) Thereafter, on January 15, 2016, Plaintiffs filed notice of interlocutory appeal of the December 14, 2015 decision (ECF No. 132), which the Second Circuit stayed pending the resolution of the motion for reconsideration (*see* ECF No. 136). By Opinion and Order dated March 8, 2016, the Court denied Plaintiffs' motion for reconsideration (ECF No. 135), and the Second Circuit lifted the stay of the appeal (ECF No. 136). The Court then stayed discovery in the case pending the resolution of the appeal.  (ECF No. 124.)

**C.  The Second Circuit's Decision and Plaintiffs' Request to Amend the SAC**

On February 7, 2017, the Second Circuit issued a summary order vacating the Court's December 14, 2015 decision and remanding the case for furthering proceedings. (ECF No. 139.) The Second Circuit concluded that *Younger* abstention did not apply to cases involving efforts

3

only to obtain monetary damages. (*Id.* at 3.) The Court lifted the stay and directed the parties to complete an amended discovery plan and appear before Magistrate Judge McCarthy.  (ECF No. 143.)

On March 3, 2017, Defendants requested that the Court reopen the previously pending motions. (ECF No. 150.) The Court held a conference on March 22, 2017 during which Plaintiffs requested and were granted leave to file a motion to amend the complaint. The Court also set a briefing schedule for Defendants' anticipated opposition and motion to dismiss.

### D.  Plaintiffs' First Proposed TAC

On September 5, 2017, Plaintiffs filed their motion to amend the SAC.  (ECF No. 169.) The proposed Third Amended Complaint ("TAC" (ECF No. 169-2)) ballooned from 28 pages and 142 paragraphs to a staggering 181 pages and 711 paragraphs. In addition to adding what appears to be numerous references to and quotations from unattached documents, stating redundant, argumentative, and conclusory statements, and setting forth opinions and rhetorical questions, the proposed TAC also revised and added several causes of action.

On January 27, 2020, the Court issue an opinion and order, denying Plaintiffs' motion to amend for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. (ECF No. 182.) The Court permitted Plaintiffs to seek leave to file a revised Third Amended Complaint consistent with that order.

### E.  Plaintiffs' Second Proposed Third Amended Complaint

On June 26, 2020, Plaintiffs filed a motion for leave to file a new proposed Third Amended Complaint ("PAC" (ECF No. 187)), which was shortened to 54 pages and 368 paragraphs. The revised PAC contains twelve causes of action: (1) violation of DJ's Fourteenth Amendment due process rights against all defendants, (2) an unclear *Monell* claim against the

County of Westchester, (3) violation of DJ's rights under the ADA against all defendants, (4) violation of DJ's Article XVII New York State Constitutional rights against all defendants, (5) violation of DJ's rights conferred by the Social Services Law and Family Court articles Six and Ten against all defendants, (6) negligence against the County of Westchester, (7) negligent supervision against the County of Westchester, (8) failure to train against the County of Westchester, (9) negligence against Defendants Knudsen and Hazoury, (10) intentional and negligent infliction of emotional distress against all defendants, (11) legal malpractice against Lisa Colin, and (12) loss of consortium against all defendants.

Defendants again opposed Plaintiffs' motion and, in the alternative, moved to dismiss the PAC. (ECF Nos. 189 & 193.)

## LEGAL STANDARD

### I.      Leave to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, although a party that has already amended its pleadings may only amend again with "the opposing party's written consent or the court's leave," the rule makes clear that leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Because the rule espouses a "policy in favor of granting leave to amend," *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987), a court may generally only exercise its discretion "to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (outlining circumstances where a motion to amend may be denied, including "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowing the amendment, [or the] futility of amendment").  "An amendment to a

pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing

*Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

## II.      Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), dismissal is

proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual

allegations in the complaint, "a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief." *Id*. at 679. "Although for the purpose of a

motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is]

'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting

*Twombly*, 550 U.S. at 555). It is not necessary for the complaint to assert "detailed factual

allegations," but it must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555.

The facts in the complaint "must be enough to raise a right to relief above the speculative level

on the assumption that all the allegations in the complaint are true." *Id*.

## DISCUSSION

## I.      Leave to Amend

Rule 8 of the Federal Rules of Civil Procedure requires that a "pleading that states a

claim for relief . . . contain a short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Even if "[n]o technical form is required," "[e]ach

allegation must be simple, concise, and direct."  *Id*. 8(d)(1).  As the Second Circuit has

explained, although the "principal function" of a pleading is to give a party "fair notice of the

claim asserted," the "statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it [if] they are forced to select the relevant material from a mass of verbiage.'" *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5C Wright & A. Miller, *Federal Practice and Procedure* § 1281, at 365 (1969) (alteration in original)).

"When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." *Id.* Dismissal is typically warranted where a complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Cohen v. Capers*, No. 16-cv-6090 (PKC)(AJP), 2017 WL 2455132, at *3 (S.D.N.Y. June 6, 2017) (quoting *Salahuddin*, 861 F.2d at 42). Courts should focus on whether "the complaint's form or substance prevents the defendant from forming a fair understanding of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 281 (S.D.N.Y. 2015). If a court dismisses the complaint for failure to comply with Rule 8(a), "it should generally give the plaintiff leave to amend." *Duncan v. Thompson*, No. 03 CV 403(SJ), 2004 WL 1810332, at *2 (E.D.N.Y. Aug. 12, 2004) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)); *see also Salahuddin*, 861 F.2d at 42 ("Given our jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities, it will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8.").

To be sure, under *Twombly* and *Iqbal* a complaint must allege "'enough facts to state a claim to relief that is plausible on its face,' such that the court [can] 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *E.E.O.C. v. Port Auth. of N.Y.*

*and N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007); *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  As one court has explained, however,

the "short-and-plain statement requirement" has been "independently interpreted, perhaps along

with the requirement in Rule 8(d)(1) that allegations be 'simple, concise, and direct,' to protect

interests separate from the [*Twombly*/*Iqbal*] entitlement requirement."  *Green*, 96 F. Supp. 3d at

280.  In other words, while *Twombly* and *Iqbal*'s pleading standard asks "how short is too short,"

the "short-and-plain statement requirement" asks "how long is not short enough[.]" *Id.*

      Defendants argue that the PAC continues to violate Rule 8 because it is 54 pages and 368

paragraphs, and contains factual allegations out of chronological order, contradictory and

conclusory allegations, and factual allegations that do not appear to support any particular claim.

(ECF No. 190 at 5; ECF No. 195 at 5-6.) While the PAC is not the model of clarity, "verbosity

alone does not require dismissal under Rule 8."  *See Rodriguez v. Trs. of Columbia Univ. in the*

*City of N.Y.*, 2006 WL 2521323, at *3 (S.D.N.Y. Aug. 30, 2006). Plaintiffs allege ongoing

violations over a period of more than one decade and allege enough facts to state some plausible

claims, as detailed in the analysis below. Therefore, the Court will grant Plaintiffs' motion to file

the PAC.

## II.    **Defendants' Motions to Dismiss**

      Defendants argue that, if the PAC is accepted, the Court must dismiss it because Plaintiffs

fail to plead each of their twelve causes of action. The Court analyzes each below.[1]

### 1.  Substantive Due Process

      The Due Process Clause of the Fourteenth Amendment provides that no state shall

"deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

---

[1] Note that there are only eleven sections below because the Court addresses both of DJ's negligence claims (against the County and against the individual County Defendants) together.

XIV § 1. "Substantive Due Process" prevents the government from engaging in conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172 (1952), or interferes with rights "[i]mplicit in the concept of ordered liberty," *Palko v. State of Connecticut*, 302 U.S. 319, 324 (1937). "Two requirements must be satisfied in order for a state actor to be held liable for failing to protect a child in its custody. First, the alleged acts and omissions must have been a substantial factor leading to the denial of the constitutional right. . . . Second, the officials in charge of the agency being sued must have displayed a mental state of deliberate indifference." *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 194 (E.D.N.Y. 2014) (internal quotations omitted).

The PAC alleges that the County Defendants "through their roles as policymakers, DSS caseworkers and supervisors, deprived DJ of her most basic constitutional liberties including DJ's right to be free from restraint, free from physical, emotional[,] and developmental harm, and the right to adequate food, shelter, clothing[,] and reasonable safety while she was in their legal custody . . . . [and] caused a massive regression in intellectual/academic capacity." (ECF No. 187-3 ¶ 290-293.) Plaintiffs allege that the County Defendants were deliberately indifferent to the treatment DJ received in their care.

*A. Immunity*

Defendants argue that three immunities—absolute immunity, qualified immunity, and statutory immunity—bar liability as to the individual County Defendants. For the following reasons, the Court finds that these immunities bar some, but not all, of DJ's substantive due process claims.

**<u>Absolute Immunity</u>**

Though not found in the text of Section 1983, the common law principle of immunity has been applied to various categories of defendants sued pursuant to the statute in recognition of the principle that "[p]ublic officials, whether governors, mayors or police, legislators or judges," must make decisions and take action in order to "fully and faithfully perform the duties of their offices"—and "it is better to risk some error and possible injury from such error than not to decide or act at all." *Scheuer v. Rhodes*, 416 U.S. 232, 241-42 (1974); *see also Spalding v. Vilas*, 161 U.S. 483, 499 (1896) ("if [an executive officer] acts, having authority, his conduct cannot be made the foundation of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals").

The test to determine whether immunity applies to a particular defendant's conduct is a functional one—in this case, whether the actions taken were judicial in nature—and does not rely on whether the defendant's title falls within a designated category. *See Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (holding that a "private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is 'functionally comparable to that of a judge'" (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978))); *Doe v. Phillips*, 81 F.3d 1204, 1213 (2d Cir. 1996) ("In short, absolute immunity insulates prosecutorial misconduct—however outrageous—so long as the misconduct is prosecutorial."); *accord Kalina v. Fletcher*, 522 U.S. 118 (1997).

The PAC alleges DJ's constitutional rights were violated due to the placements and treatments she received, matters which were submitted to Family Court for approval. In *Ernst v. Child & Youth Services of Chester County*, the Third Circuit found that child welfare workers were entitled to absolute immunity because (1) their functions were closely analogous to the

10

functions performed by prosecutors in criminal proceedings, (2) public policy considerations weighed in favor of immunity, and (3) the court proceedings incorporated procedural safeguards to protect against unconstitutional actions by child welfare workers., 108 F.3d 486, 495 (3d Cir. 1997). As in *Ernst*, the individual County Defendants were responsible for making recommendations to Family Court; however, ultimately, Family Court was responsible for determining the appropriate placements for DJ. Further, "[l]ike a prosecutor, a child welfare worker must exercise independent judgment in deciding whether or not to bring a child dependency proceeding, and such judgment would likely be compromised if the worker faced the threat of personal liability for every mistake in judgment." *Id.* at 497. Plaintiffs argue that *Ernst* is inapplicable because the individual County Defendants "knew about but repeatedly ignored evidence that [DJ] was doing poorly in her placements and needed immediate intervention" and "failed to intervene or advocate for [DJ]." (ECF No. 188 at 12-13.) However, any failure to intervene or advocate by the individual County Defendants was a failure to present issues to the Family Court, which possessed the power to order changes to DJ's placements and treatments. *See Mosher-Simons v. County of Allegany,* 99 N.Y.2d 214, 220 (2002) (finding that caseworker whose role was to gather and report pertinent information to assist the court in determining appropriate placement enjoyed absolute immunity). Accordingly, the Court finds that the individual County Defendants are entitled to absolute immunity with respect to allegations of improper placement and treatment and dismisses the substantive due process claims to that extent.

However, the PAC also alleges that the individual County Defendants failed to implement care plans (ECF No. 187-3 ¶ 291)[2] and failed to provide services ordered by the Family Court or required by law. Other portions of the PAC detail the County Defendants' failure to provide DJ with an education.[3] Absolute immunity does not shield this conduct.

## Qualified Immunity

The doctrine of qualified immunity gives "officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To determine whether a right was clearly established, the Court looks to: (1) "the specificity with which a right is defined"; (2) the existence of Supreme Court or the applicable circuit court case law on the subject; and (3) whether it was "objectively reasonable" for the defendant to believe the conduct at issue was lawful. *Id.* at 231; *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013).

In this Circuit, "a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein*, 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012).

---

[2] While the PAC is unclear as to what care plans the claim is referring to, other portions of the PAC include allegations that Defendants did not follow a Family Court order requiring DJ to be registered in school and placed in a home without a man. (ECF No. 187-3 ¶ 223.)

[3] The County Defendants argue that Plaintiffs fail to bring a substantive due process claim pertaining to the County Defendants' failure to provide Plaintiff with an education. The Court disagrees. The cause of action incorporates Plaintiffs' education allegations by reference. The cause of action specifies that the County Defendants failed to implement care plans—which the Court interprets to be referring to the County Defendants' failure to enroll DJ in school pursuant to a court order. Further, it articulates that the County Defendants' failures led to DJ's academic decline.

"Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992) and citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)). "[T]he plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* Thus, the qualified immunity defense is "typically addressed at the summary judgment stage," because it "usually depends on the facts of the case, . . . making dismissal at the pleading stage inappropriate." *Woods v. Goord*, 2002 WL 731691, at *10 (S.D.N.Y. Apr. 23, 2002) (citing *King v. Simpson*, 189 F.3d 284, 289 (2d Cir. 1999)).

The Court finds that qualified immunity shields the individual County Defendants from liability arising from DJ's medical treatments because it is objectively reasonable for a caseworker to rely on a medical professional's diagnosis. *See V.S. v. Muhammad*, 595 F.3d 426, 431 (2d Cir. 2010) (holding qualified immunity applied to caseworkers because it was objectively reasonable for them to rely on the—ultimately incorrect—diagnosis of a qualified medical professional). Plaintiffs argue that *V.S.* is inapplicable here because DJ's claims do not arise out of Defendants' decision to follow medical advice, but rather out of their failure to properly monitor her health and well-being. However, *V.S.* makes clear that caseworkers are not in the position to second-guess the judgments and treatments of qualified medical professionals. The overwhelming majority of Plaintiffs' allegations concern DJ's medical treatment and hospitalization, decisions that are reasonably left to medical professionals. Therefore, the Court finds that qualified immunity applies to Plaintiffs' placement and treatment allegations. Whether

13

qualified immunity extends to other actions taken by the Defendants is unclear at this stage of the litigation because it turns on the extent of the violation of DJ's rights.

**Statutory Immunity**

Social Services Law ("SSL") § 419 provides immunity to persons "participating in good faith in the providing of a service pursuant to [§ 424], the making of a report, the taking of photographs, the removal or keeping of a child pursuant to this title, or the disclosure of child protective services information in compliance with [§§ 20, 422, and 422a]." SSL § 424 enumerates services including: "coordinat[ing,] provid[ing,] or arrang[ing] for and monitor[ing], as authorized by the social services law, the family court act and by this title, rehabilitative services for children and their families on a voluntary basis or under a final or intermediate order of the family court." SLL § 424(13). Therefore, the Court finds that the immunity conveyed by § 419 has the potential to apply broadly to much of the conduct alleged, so long as such conduct was undertaken in good faith.

Plaintiffs assert that the County Defendants' actions were not in good faith and therefore cannot be shielded. Section 419 indicates that "good faith . . . shall be presumed . . . [provided that] such liability did not result from the willful misconduct or gross negligence [of Defendants]." SLL § 419. While Defendants' deference to the recommendations of medical professionals and to court orders cannot constitute gross negligence, the PAC plausibly alleges conduct by the individual County Defendants amounting to gross negligence as it pertains to their failure to abide by a Family Court order requiring them to enroll DJ in school and their ongoing failure to provide DJ with an education. Therefore, the Court finds that statutory immunity applies to the alleged conduct pertaining to medical treatments, facility placements, and the routine provision of services. However, the Court finds that at the motion to dismiss

stage it is unclear whether statutory immunity is available as to claims regarding Defendants'

failure to provide DJ with an education, failure to comply with a court order, and failure to

implement DJ's care plans.

*** 

In sum, various immunities shield the individual County Defendants from liability arising

from DJ's medical treatments and placements. However, at this stage in the litigation,

immunities do not shield the individual County Defendants from liability arising from their

failure to provide DJ with an education or any grossly negligent failures to provide services to

DJ.

### B.  Municipal Liability

Plaintiffs allege a substantive due process claim against the County. Municipalities may

only be held liable under § 1983 where "the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision officially adopted

or promulgated by those whose edicts or acts may fairly be said to represent official policy."

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 659 (1978). In addition, local governments, like

every other person, "may be sued for constitutional deprivations visited pursuant to

governmental custom even though such custom has not received formal approval through the

government's official decision-making channels." *Id.*

Courts in this Circuit apply a two-prong test for § 1983 claims brought against a

municipality. *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985) (citation omitted).

First, the plaintiff must allege "the existence of a municipal policy or custom in order to show

that the municipality took some action that caused his injuries beyond merely employing the

misbehaving officer." *Id.* (citation omitted). Second, the plaintiff must establish a "direct causal

link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

To satisfy the first requirement, a plaintiff must allege: (1) a formal municipal policy; (2) actions taken or decisions made by government officials responsible for establishing municipal policies that caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y.1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F.Supp.2d 261, 276–77 (S.D.N.Y.2010) (quoting *Moray* and updating citations to cases).

Although a plaintiff is not required to identify an express rule or regulation to establish a *Monell* claim, proof of "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks omitted). "In the end, therefore, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Hayes*, 853 F.Supp.2d at 439 (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir.2008) (internal quotation marks omitted).

Plaintiffs bring this substantive due process claim against the County in addition to the individual County Defendants. However, the PAC does not plausibly allege a policy or custom or failure to properly train. Accordingly, the Court dismisses the substantive due process claim against the County for failure to allege a policy or custom or failure to properly train.

16

## C.  IDEA Exhaustion

The County Defendants argue that DJ's substantive due process education claim is barred for failure to meet the exhaustion requirements of the Individuals with Disabilities Education Act ("IDEA").  "Section 1415(l) [of the IDEA] requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit seek[s] relief that is also available under the IDEA." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017). The PAC alleges that DJ was essentially denied access to an education altogether while in the County Defendants' care. This is distinct from a claim brought under the IDEA for denial of a free appropriate public education ("FAPE"). *See Id.* at 756 (explaining that the inquiry for determining whether IDEA's exhaustion requirements apply is whether the gravamen of the complaint concerns the denial of FAPE). As the Supreme Court noted, "the statute's goal is to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her 'unique needs.'" *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755 (2017). Here, DJ challenges the County Defendants' failure to enroll her in any education program whatsoever, not their failure to provide her with appropriate services and instruction.[4] Accordingly, IDEA exhaustion was not required.

## D.  Merits of Plaintiff's Claims

The County Defendants also move to dismiss some of DJ's due process claims on the merits. The Court finds that all of the claims, except claims pertaining to Defendants' failure to

---

[4] In *Fry*, the Supreme Court posed two hypothetical questions to tease out whether the gravamen of a complaint concerns the denial of FAPE or general discrimination: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school? Second, could an adult at the school have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject." *Fry*, 137 S. Ct. at 747. These hypothetical questions do not make sense when extended to cases such as this one where there are no claims about conduct that occurred at a school because the PAC alleges DJ was deprived of enrollment in a school altogether.

provide DJ with an education are inadequately pled. Defendants' reliance on the opinions of medical providers and court-ordered or emergency-drive placements were reasonable and therefore do not rise to the level of deliberate indifference. *Duchesne v. Sugarman*, 566 F.2d 817, 825-29 (2d Cir. 1977); *V.S.*, 595 F.3d at 431. Further, although the PAC vaguely alleges that Defendants failed to provide services and indicates that Defendants failed to secure a placement home without a male, it is unclear what constitutionally protected right DJ was deprived of. Therefore, the Court dismisses these due process claims.

***

Accordingly, the Court dismisses DJ's substantive due process claims against all Defendants,[5] with the exception of DJ's due process claim against the individual County Defendants for failure to provide her with an education.

### 2. *Monell*

The PAC appears to allege additional *Monell* claims against the County. Specifically, the PAC alleges that the County erred by "(a) improperly training, authorizing, encouraging or directing caseworkers on proper procedures upon removal of a child; (b) failing to investigate allegations of failed placements, missed services, and alternatives; (c) failing to discipline the caseworkers for their gross negligence as it compounded DJ's damages; (d) failing to have policies in place to ensure children have alternatives to psychiatric hospitalization; (e) failing to ensure that DJ received a minimal level of care while she remained in their legal custody and control; [and] (f) failing to act even though they had knowledge of actual harm happening to DJ for a period of years." (ECF No. 187-3 ¶ 306.)

---

[5] The PAC indicates that DJ's substantive due process claims are also brought against Colin. However, the PAC fails to allege that DJ was in Colin's care or that Colin played a role in the deprivation of any right. Therefore, the substantive due process claims against Colin are properly dismissed.

As an initial matter, a *Monell* claim must be premised on an underlying deprivation of a constitutional right. As discussed above, the only adequately plead § 1983 claim is the claim regarding the individual County Defendants' failure to provide DJ with an education. None of the County's alleged policy errors are related to the denial of education. Further, the allegations are conclusory. Plaintiffs fail to indicate what policies or practices the County had in place or to articulate their specific deficiencies. Plaintiffs argue that the "deliberate indifference [by the individual County Defendants] lasted for many years and was therefore sufficiently widespread that the [PAC] plausibly asserts that County supervisors knew about this indifference but did nothing about it." (ECF No. 188 at 28.) However, the alleged deliberate indifference by the individual County Defendants as to one individual is insufficient to infer a widespread policy sufficient to put the County on notice. Therefore, the Court dismisses these *Monell* claims against the County.

3. <u>ADA</u>

DJ brings claims against all Defendants, alleging she was "denied the benefits of and full participation in the foster care system and state education system" in violation of the ADA. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must allege that: (1) plaintiff is a "qualified individual with a disability"; (2) plaintiff was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity"; and (3) "such exclusion or discrimination was due to [plaintiff's] disability." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016). "Exclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Id*. Plaintiffs have adequately alleged that DJ was so deprived by the County.

**Foster Care System**

As to DJ's exclusion from the foster care system, the PAC fails to allege a claim under the ADA. In *Olmstead v. L.C. ex rel. Zimring*, the Supreme Court held that placement in institutions rather than community settings constitutes discrimination when (1) medical professionals have determined that community placement is appropriate, (2) the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and (3) the placement can be reasonably accommodated. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 596-570 (1999). Plaintiff has not adequately pled that DJ met these requirements; in fact, it appears that the medical professionals treating DJ believed that community placement would not be appropriate for her. Therefore, Plaintiff's ADA claim based on inadequate access to the foster care system is dismissed.

**State Education System**

The County Defendants seek to dismiss DJ's state education claims on the grounds that (1) she is not a qualified individual, (2) she failed to meet the IDEA's exhaustion requirement, and (3) the individual County Defendants cannot be held liable in their individual capacities for damages.

First, Plaintiffs have adequately pled that DJ is a qualified individual. The PAC alleges that DJ was able to attend a mainstream school prior to her hospitalization and plausibly alleges that she was capable of participating in educational services. Further, the PAC alleges that the County Defendants failed to register DJ for school, in violation of a Family Court order. Second, for the same reasons detailed in the substantive due process section above, the IDEA's exhaustion requirement does not apply to this scenario.

Finally, the Court agrees that the ADA claims against the individual County Defendants

must be dismissed. *See Hudson v. Lockhart*, 554 F.Supp.2d 494, 497 (S.D.N.Y. 2008) (individual defendants may not be held liable for damages, in either a personal capacity or an official capacity, for alleged violations of ADA Title II).

Therefore, the Court dismisses all of DJ's ADA claims against the individual County Defendants and dismisses DJ's claims regarding access to the foster care system against the County.

4. <u>Article XVII</u>

In their opposition brief, Plaintiffs indicate their intention to abandon this claim. (ECF No. 188 at 1.) Accordingly, the Court dismisses Plaintiffs' state constitutional claim under Article XVII.

5. <u>Social Services Law and Family Court Articles Six and Ten</u>

Plaintiffs vaguely allege that DJ was eligible for services she did not receive and possessed certain rights which were violated pursuant to Social Services Law and Family Court Articles Six and Ten. However, the PAC is unclear as to the specific violations and deprivations. The County Defendants argued that this claim was inadequately pled and Plaintiffs failed to respond altogether. Therefore, the Court dismisses this claim as abandoned. *See Lipton v. Cty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

6. <u>Negligence (against the County Defendants)</u>

Under New York law, which governs Plaintiffs' negligence claims, "[t]o establish a *prima facie* case of negligence, a plaintiff must establish the existence of a duty owed by a defendant to the plaintiff, a breach of that duty, and that such breach was a proximate cause of

injury to the plaintiff." *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 205 (E.D.N.Y. 2014) (quoting *Nappi v. Inc. Vill. of Lynbrook*, 19 A.D.3d 565, 566 (2d Dep't 2005)).

Defendants seek to dismiss DJ's negligence claims on the grounds that (1) the County Defendants owed no duty to DJ and (2) the individual County Defendants enjoy SSL immunity. As an initial matter, it is clear that the County Defendants had a duty to DJ. "Indeed, the duty to care for the welfare of the children is imposed on the county by the State (Social Services Law §§ 395, 398), including the responsibility to place the children in foster homes or other institutions under proper safeguards (Social Services Law § 398[6][g]), to supervise the children while in foster homes (Social Services Law § 398[6][h]), and to remove them from the foster home when necessary (Social Services Law § 400)." *Barnes v. Nassau Cnty.*, 108 A.D.2d 50, 54, 487 N.Y.S.2d 827, 830 (1985) (finding that a New York county has a duty to children in its care).[6] The County Defendants argue that because their duty to DJ is statutorily-created, the Court must determine whether the creation of a private right of action would be appropriate. (ECF No. 190 at 19.) However, the County Defendants fail to cite any authority to explain why a private right of action should not exist and New York courts have considered negligence claims brought by children in the custody of the state. *See, e.g.*, *Barnes v. Nassau Cnty.*, 108 A.D.2d 50, 54, 487 N.Y.S.2d 827 (1985); *Bartels v. Westchester Cnty.*, 76 A.D.2d 517, 519, 429 N.Y.S.2d 906 (1980).

Further, while the individual County Defendants' conduct that is merely negligent is shielded from liability by SSL § 419, the PAC alleges conduct that could conceivably rise to the level of gross negligence or recklessness, which, if proven, would not be shielded. The PAC

---

[6] Plaintiffs also argue that the County Defendants have a common-law duty to DJ; however, Plaintiffs fail to articulate the source of that common-law duty or provide any citation to authority supporting such a duty.

alleges that the individual County Defendants were aware DJ was suffering from ongoing harm due to deprivation of education,[7] and failed to intervene over a long period of time. Accordingly, the Court denies the County Defendants' motion to dismiss this claim as it pertains to these ongoing harms.

### 7.   Negligent Supervision

In their opposition brief, Plaintiffs indicate their intention to abandon this claim. (ECF No. 188 at 1.) Accordingly, the Court dismisses DJ's negligent supervision claim.

### 8.   Failure to Train

The County Defendants argue that the failure to train claims should be dismissed because "New York law does not permit a claim for negligent hiring, training, retention or supervision where the defendants act in the scope of their employment." *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015) (collecting cases). The Court agrees. Additionally, Plaintiffs failed to respond to the County Defendants' argument and this claim is properly deemed abandoned. *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d at 446.

### 9.   Intentional and negligent infliction of emotional distress

The County Defendants argue that these claims should be dismissed because the PAC alleges that same conduct for these claims as for Plaintiffs' negligence and § 1983 claims. As such, these claims are subsumed by Plaintiffs' other claims. *See Cruz v. City of New Rochelle*, No. 13CV7432 (LMS), 2017 WL 1402122, at *31 (S.D.N.Y. Apr. 3, 2017). The Court agrees. Additionally, Plaintiffs failed to respond to the County Defendants' argument that these claims should be dismissed as subsumed; therefore this claim is also properly deemed abandoned. *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d at 446.

---

[7] The PAC also alleges issues with DJ's medication and treatment; however, as the Court noted before, Defendants' failure to question the treatment ordered by medical professionals does not arise to negligent conduct.

10. <u>Legal Malpractice</u>

The PAC alleges a legal malpractice claim against Colin, who served as DJ's guardian ad litem in Family Court proceedings. Plaintiffs argue that Colin failed to correct a conflict of interest created by her representation of DJ and DJ's siblings; failed to take adequate steps to remediate the issues DJ confronted; failed to secure an alternative placement for DJ; and failed to investigate DJ's circumstances by having little contact with DJ, initiating no independent investigations or medical exams, and never requesting or reviewing records other than what the County provided. (ECF No. 187-3 at 52.)

To state a claim for legal malpractice under New York law, a plaintiff must allege: (1) an attorney-client relationship, (2) attorney negligence, (3) that the attorney's negligence is the proximate cause of plaintiff's loss or injury, and (4) actual damages. *See Decker v. Nagel Rice LLC*, No. 09 Civ. 9878(SAS), 2010 WL 2346608, at *3 (S.D.N.Y. May 28, 2010); *Hoffenberg v. Meyers*, No. 99 Civ. 4674, 2002 WL 57252 (S.D.N.Y. 2002) (noting that plaintiff must show "that an attorney-client relationship existed, that a duty was owed, that there was a wrongful act or omission which was the proximate cause of the damages, and the measure of those damages"); *Brooks v. Lewin*, 21 A.D.3d 731, 734–35(1st Dep't 2005) ("An action for legal malpractice requires proof of three elements: (1) that the attorney was negligent; (2) that such negligence was a proximate cause of plaintiff's losses; and (3) proof of actual damages."). In other words, a plaintiff must allege that the attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession." *Decker*, 2010 WL 2346608, at *3. To plead the proximate cause and actual damages elements, a plaintiff must allege that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." *Id*.

As an initial matter, the typical standard for legal malpractice does not apply to Colin. While this standard may be appropriate in cases where a law guardian acts as "of counsel," such as when a law guardian represents the interests of an older child, it is inappropriate in circumstances where a guardian ad litem represents the interest of a young child or a child who is incapable of intellectually expressing her views because such interests require the attorney to make her own judgments as to the best interests of the child. *See Marquez v. Presbyterian Hosp. in City of New York*, 159 Misc. 2d 617, 625, 608 N.Y.S.2d 1012 (Sup. Ct. 1994). In this case, Colin began representing DJ when she was very young. The PAC also alleges that, as DJ aged, she suffered from psychological ailments and mental deficiencies. Therefore, "liability should attach only if there is a showing that the Law Guardian failed to act in good faith in exercising discretion or failed to exercise any discretion at all." *Id*. 159 Misc. 2d at 625. While the PAC alleges additional actions Colin could have taken, it does not allege that Colin acted in bad faith.

Further, Plaintiffs fail to plead a claim even under the more forgiving standard. The PAC fails to allege that Colin's actions were negligent or that Colin's actions caused injury to DJ. The PAC vaguely alleges that Colin failed to take certain steps or initiate certain investigations. However, "[t]he conduct of legal matters routinely involves questions of judgment and discretion as to which even the most distinguished members of the profession may differ." *Bua v. Purcell & Ingrao*, 99 A.D.3d 843, 846 (2d Dep't 2012) (internal citation omitted). Further, the only injuries alleged are a vague failure to remediate issues DJ confronted and failure to secure an alternative placement. However, the PAC fails to allege how Colin's conduct specifically caused either of these injuries. To the contrary, the PAC indicates that the Family Court was well-aware of many of the issues facing DJ at her placements and the issues nonetheless persisted. Therefore, the Court dismisses DJ's legal malpractice claim against Colin.

11. Loss of consortium

The PAC asserts a loss of consortium claim on behalf of Plaintiff Latonia. However, "New York does not allow recovery by a parent for the loss of consortium of a child." *Morley v. Am. Airlines, Inc. (In re Air Crash at Belle Harbor, N.Y.)*, 508 F. Supp. 2d 244, 249 (S.D.N.Y. 2007) (citing *Gilbert v. Stanton Brewery*, 295 N.Y. 270, 273 (1946); *Devito v. Opatich*, 215 A.D.2d 714, 715 (2d Dep't 1995)). Accordingly, the Court dismisses the loss of consortium claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend is GRANTED. The County Defendants' motion to dismiss is DENIED as to DJ's substantive due process claim for failure to provide an education against the individual County Defendants, DJ's ADA claim for failure to provide an education against the County, and DJ's negligence claim for injuries arising from failure to provide an education against the County Defendants and GRANTED as to all other claims. Defendant Colin's motion to dismiss is GRANTED in its entirety. Plaintiffs are directed to file their PAC on or before April 7, 2021. The remaining defendants are directed to file an Answer to the PAC on or before May 7, 2021. The parties are directed to file a revised Case Management Plan and Scheduling Order on or before May 14, 2021 (template attached). Alternatively, if the parties believe that further discovery is unnecessary, they shall inform the

Court in writing by May 14, 2021. The Clerk of the Court is respectfully directed to terminate

defendant Lisa Colin and terminate the motions at ECF Nos. 187, 189, and 193.


Dated:    March 31, 2021                          SO ORDERED:
          White Plains, New York

                                         _____
                                               NELSON S. ROMÁN
                                            United States District Judge

UNITED STATES DISTRICT COURT                              Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x


                                                    **CIVIL CASE DISCOVERY PLAN**
                                Plaintiff(s),        **AND SCHEDULING ORDER**

          - against -


                                Defendant(s).        _____ CV _____ (NSR)


------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

    1.      All parties [consent] [do not consent] to conducting all further proceedings before
            a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
            The parties are free to withhold consent without adverse substantive consequences.
            (If all parties consent, the remaining paragraphs of this form need not be
            completed.)

    2.      This case [is] [is not] to be tried to a jury.

    3.      Joinder of additional parties must be accomplished by
            _____.

    4.      Amended pleadings may be filed until _____.

    5.      Interrogatories shall be served no later than _____, and responses
            thereto shall be served within thirty (30) days thereafter.  The provisions of Local
            Civil Rule 33.3 [shall] [shall not] apply to this case.

    6.      First request for production of documents, if any, shall be served no later than
            _____.

    7.      Non-expert depositions shall be completed by _____.

            a.      Unless counsel agree otherwise or the Court so orders, depositions shall not
                    be held until all parties have responded to any first requests for production
                    of documents.

            b.      Depositions shall proceed concurrently.

            c.      Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.   Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.   Requests to Admit, if any, shall be served no later than _____.

10.  Expert reports shall be served no later than _____.

11.  Rebuttal expert reports shall be served no later than _____.

12.  Expert depositions shall be completed by _____.

13.  Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.  **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.  Any motions shall be filed in accordance with the Court's Individual Practices.

16.  This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.  The Magistrate Judge assigned to this case is the Hon. _____.

18.  If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.  The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge